**Patricia Ann WHIDDON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45961.**

Court of Criminal Appeals of Texas.

April 11, 1973.

The State's evidence reflects that police were called to the apartment of appellant and her husband, the deceased, about 3:00 o'clock A.M., November 2, 1969. They found the body of Marvin L. Whiddon lying dead on the floor of the apartment with a gunshot wound which entered in his back and penetrated the aorta, which wound, according to the medical examiner, caused the death. The appellant and her parents were in another room, and she stated to them and to the police that she had shot deceased.

Appellant testified that she went to a party about 10:30 that night, leaving a note for her husband telling where she had gone. He joined the party about 11:00 or 11:30. They returned to their apartment about 3:00 A.M. While in the living room they started quarrelling, and he hit her, threatened her, and began choking her. When appellant was able to get free from him, she went to the bedroom and secured a pistol. When she returned to the living room with the pistol he saw it and again started choking her. That, according to her evidence, was when she shot him.

█ The evidence is sufficient to sustain the verdict of the jury.

Appellant has several grounds of error relating to the use by the State on cross-examination of her written confession, made while under arrest, for impeachment.[1]

Appellant testified that the last thing she recalled was deceased choking her on her return to the room with the pistol, and that she did not remember anything that happened after that until she reached the police station. She stated:

> "Q  All right. He started choking you and how long did he choke you, do you recall?

Michael Greenberg, Irving, for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of murder without malice, and her punishment was assessed at three (3) years. This appeal is from such conviction.

---

1. Some time prior to the trial appellant filed a motion to suppress the confession on the grounds that it did not comply with Article 38.22, Vernon's Ann.C.C.P., or with the guide lines established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and also a motion in limine asking for a hearing outside of the presence of the jury on the validity and admissibility of the confession before any portion was admitted in evidence. The record contains no order or ruling on the motion to suppress. The motion in limine was granted.

"A No, sir, I don't. Right after that I don't remember anything else until I got to the police station.

"Q That was when you shot him?

"A Yes, sir.

"Q Do you recall shooting him?

"A No, sir, I don't remember shooting the gun but I remember bringing it back in there and him grabbing me.

"Q After that you don't remember anything else?

"A Not until they were questioning me at the police station.

"Q You heard the testimony that he was shot twice?

"A Yes, sir.

"Q Do you recall shooting him twice?

"A No, I really don't.

"Q Do you recall the gun going off?

"A I don't remember hearing it, no, sir."

During the cross-examination of appellant, the court, after conferring with the attorneys at the bench, excused the jury from the courtroom, and a discussion ensued as to the use by the State of portions of a written confession made by appellant to the police the morning of the offense.[2] It was appellant's position that the State could not use the confession for any purpose, "of impeachment, of admissibility." The State did not attempt to prove that the confession met the requirements

of Article 38.22, V.A.C.C.P. The view of the State was that the confession could be used to impeach appellant in those statements where her testimony was in conflict with her written statement. The court overruled the appellant's objections, and gave her a running bill on any evidence that might go into the record regarding any prior statements she made for any purpose, "that of impeachment, of admissibility."

Over appellant's renewed objection that the State "hasn't laid the proper predicate for impeachment," the State was permitted to cross-examine appellant by asking if she had told the officer certain portions of what was contained in her statement. Portions of this statement conflicted with appellant's testimony that she did not recall shooting deceased, or any of the events which occurred after he started choking her the second time. Portions were introduced to prove that she shot deceased a second time, a fact which she did not admit while testifying on the stand.

As a rebuttal witness, the State placed detective Neeley on the stand. He stated that about 5:30 A.M. on the day in question, he talked with appellant in the police station. She was in custody. He was permitted, over defense objections, to testify concerning portions of a written statement made by appellant on that occasion.[3] The State did not establish that this statement, made while appellant was under arrest, met the requirements of Article 38.22, V.A.C.C.P., or of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

2. The court stated to defense counsel: "Your position is he can't cross-examine using this confession and my position is he can. Overruled. Bring the Jury back in and see if impeachment is in the thing. She may remember everything and she can have a copy of this.
"Mr. Phillips: Note our exception."

3. When the State started asking Neeley about his conversation with appellant

while she was in custody, appellant objected.
"THE COURT: I don't know what he's going to do. You mean you filed about the other matters?
"MR. PHILLIPS: Yes, Your Honor.
"THE COURT: I assume he is not going into that in that fashion."
This would indicate a reference to appellant's motion to suppress the confession.

In the absence of the jury, the following transpired:

"THE COURT: Now, what is the theory that you are asking these questions?

"MR. BURNHAM (Prosecuting Attorney): I am going for impeachment purposes.

"THE COURT: What do you want impeached? The statement that she can't recall or she told you she didn't say?

"MR. BURNHAM: The statement she said she didn't say.

"THE COURT: Ask the witness—the proper way to do it is if she made the statement to you.

"MR. BURNHAM: All right.

"THE COURT: That's the way to handle it, if she said these things to you.

"MR. BURNHAM: She also testified on the witness stand that she didn't get a chance to read the statement before she signed it. He read it to her and handed it to her to sign it. That's the reason I was asking that question.

"MR. PHILLIPS: Judge, this is going to the point—

"THE COURT: I have told you how to do it, now, ask her that question and forget about the confession. Bring the Jury in here.

"(Whereupon the Jury was brought into the courtroom and the following proceedings were had in the presence of the jury.)

"Q (by Mr. Burnham): Detective Neeley, did she make—the Defendant make this statement to you—

"MR. PHILLIPS: May I have a running objection on any statement—

"THE COURT: You have your objection. Did she tell you, this is the proper way to say it: Did she tell you this. She testified she did not tell him this.

Ask did she tell you this. Not statement or confession but did she tell you this."

The State was then permitted to question the witness as to statements made by her to him, and also to place in evidence over appellant's objections following the exhibit as a portion of the confession:

"I shot him. I guess it was right up against him. I guess he thought he was hurt and MARVIN walked for the door. He had hold of the door knob when I shot him again. He just opened the door and fell out. When I shot the second time everyone was out there. My mother heard the first shot. /s/ Patricia Ann Whiddon."

The record clearly shows that the confession of appellant did not meet the requirements of Article 38.22, Easley v. State, Tex.Cr.App., 493 S.W.2d 199, delivered March 14, 1973; Garner v. State, 464 S.W.2d 111, or of Miranda v. Arizona, supra. The State offered portions of the confession and questioned appellant extensively from it, under the theory that the portions placed in evidence were admissible for impeachment. It is likewise clear that the court allowed such portions in evidence solely for that purpose, both from his remarks when he overruled appellant's objections and suggested the procedure to be adopted by the prosecuting attorney, and from his charge to the jury. In such charge, he limited their consideration of the testimony of Neeley regarding appellant's statements to him for the purposes of impeachment.

The State, in its brief, relies on Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), saying: "However, under the rule announced in Harris v. New York, supra, questions relative to the propriety of Art. 38.22 or *Miranda* warnings pass from the case when impeachment is the purpose for admitting a defendant's confession."

In the recent case of Butler v. State, Tex.Cr.App., 493 S.W.2d 190, delivered

Feb. 28, 1973, a majority of this Court, speaking through Presiding Judge Onion, said:

"In *Harris*, the Supreme Court held that a defendant who takes the stand may be impeached by a prior inconsistent confession even though the confession was inadmissible in the state's case in chief because of a failure to administer the warnings required by Miranda v. Arizona, supra, as long as the confession otherwise 'satisfie[d] legal standards as to trustworthiness.' Harris v. New York, 91 S.Ct. at 645. The Court reasoned that the purpose underlying exclusion of evidence tainted by *Miranda* error was to deter proscribed police conduct and that sufficient deterrence flowed from exclusion from the state's case in chief. This deterrence function, the Court concluded, should not be used to immunize or 'shield' a defendant-witness from the 'traditional truth-testing devices of the adversary process.' 91 S.Ct. at 645–646."

The opinion continues:

"Does the force of the *Harris* reasoning apply with equal vigor to the admission of oral confessions for impeachment which are otherwise inadmissible under Article 38.22, as is the State's contention? We believe not."

The Court proceeded to hold an oral confession made while the defendant Butler was in custody inadmissible for impeachment purposes because the confession did not meet the requirements of Article 38.22, V.A.C.C.P., and reversed and remanded. We quote further from the opinion:

"Although the *Harris* decision, sanctioning the use of otherwise inadmissible statements for impeachment purposes provided the trustworthiness of the evidence satisfies legal standards, would provide persuasion for changing Article 38.22, supra, until those changes are made that statute would control the use of prior statements for impeachment and it was error to permit the impeachment in this case. See United States v. Jordan, 20 U.S.C.M.A. 614, 44 C.M.R. 44 (Court of Military Appeals, 1971)."

Because of the prejudicial error in permitting in evidence for impeachment portions of appellant's confession not shown to meet the requirements of Article 38.22, V.A.C.C.P., the judgment is reversed and the cause is remanded.

Opinion approved by the Court.

ROBERTS, Judge (concurring).

I feel that the majority's reliance upon Butler v. State, supra, as authority for the present case is misplaced. The instant cause is easily distinguishable.

In Butler, the dissenting opinion stated:

"The testimony used in this case as set out in the majority opinion cannot and does not constitute 'a confession' or even an inculpatory statement in regard to the crime alleged."

Exactly the opposite is true of the case now before us. These statements used for impeachment are inculpatory and constituted a confession. For that reason, they were inadmissible.

Therefore, though my brother Odom and I agree with the results in the present case, we make no retreat from the position stated in the dissenting opinion in Butler v. State, supra.

ODOM, J., joins in this opinion.